UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

THEODORE J. VAN ZYL,

    Plaintiff,

v.                                    Case No. 8:09-cv-151-T-23TGW

AVIATOUR, INC., et al.,

    Defendants.

_____/

## **ORDER**

The plaintiff sues Aviatour, Inc. ("Aviatour"), Aviatour Fly N' Inc. ("Aviatour Fly N'"), Kenneth Madrid, and Jessop Bahinting. The complaint asserts a claim for unpaid wages under the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. (the "FLSA") (count one), breach of contract (count two), and conversion (count three). Aviatour and Madrid move (Doc. 8) to dismiss the complaint pursuant to Rules 12(b)(1), 12(b)(2), 12(b)(3), and 12(b)(6), Federal Rules of Civil Procedure, and the plaintiff (Doc. 12) responds in opposition.

## **BACKGROUND**

Aviatour is a Texas corporation "affiliated"[1] in an unspecified manner with Aviatour Fly N', a Philippine corporation that operates a flight school in Cebu, Philippines.[2] Jeesop Bahinting is the founder and chief executive officer of Aviatour Fly N'. "[T]hrough . . . Aviatour Fly N'" (Doc. 1-2 at 1), Aviatour leases three hangers in Cebu,

---

[1] See Tex. Bus. Org. Code § 1.002 ("'Affiliate' means a person who controls, is controlled by, or is under common control with another person.").

[2] A July 16, 2008, affidavit of Jamar Bahinting ("Jemar Bahinting Decl." [Doc. 9-2 at 53]), Aviatour's president, describes Aviatour Fly N' as "Aviatour's sister company."

Philippines, where Aviatour operates a flight school and repairs and sells aircraft. The plaintiff owns AeroComm Avionics and operates an "avionics" business in the United States. The plaintiff and Aviatour are the "sole members"[3] and half-owners of JV Avionics, LLC ("JV Avionics" or the "company"), a limited liability company formed under Texas law about October 18, 2007.[4]

The complaint alleges (Doc. 1 ¶ 17) that about February, 23, 2008,[5] (1) the plaintiff, and (2) Aviatour and Aviatour Fly N', "through their authorized agent Madrid," entered into an "Operating Agreement for Management" for the purpose of managing and operating JV Avionics in the Philippines. The attached "Operating Agreement for Management" (the "Agreement" [Doc. 1-2]) names as parties to the Agreement only Aviatour and JV Avionics. Additionally, the Agreement is executed by (i) the plaintiff (as manager-member of JV Avionics) and (ii) Madrid as authorized agent for Aviatour (as manager-member of JV Avionics). However, the Agreement states (Doc. 1-2 at 17) that the Agreement "shall be binding upon . . . the parties hereto, the successors and assigns of the Corporations (including Aviatour Fly N' Inc.)."

The Agreement provides for the initial management of the company by the plaintiff and Aviatour (the latter "through Kenneth Madrid") as "member-managers."[6] However, the Agreement also "retains" the plaintiff and Madrid as "managers" (until the

---

[3] Doc. 1-2 at 1; cf. April 3, 2009, affidavit of Kenneth Madrid (Doc. 9-2 ¶ 5) ("I have never held and do not now hold personally any ownership interest in JV Avionics, LLC. Aviatour, Inc. is a 50% owner of JV Avionics, LLC along with Theodore J. Van Zyl.").

[4] Doc. 9-2 at 28 (certificate of formation).

[5] But see Doc. 9-2 at 6 ("The Operating Agreement was fully executed on March 6, 2008.").

[6] See Doc. 1-2 at 2; see also Doc. 1-2 at 6 ("Initially, the Company shall be managed by member-managers, Aviatour, Inc., and Theodore J. Van Zyl."); Doc. 9-2 at 28 (certificate of formation).

- 2 -

company's first annual meeting or, as to Madrid, until Aviatour "designate[s] someone other than Madrid as its authorized agent") and grants the managers authority to enter contracts, incur debt, and conduct the affairs of the company.  The Agreement further provides that "neither the members of JV Avionics, LLC nor the managers nor managing members are liable under a judgment, decree or order of a court in any or in any other manner, for a debt, obligation or liability of JV Avionics, LLC, except as provided in Texas Statutes."[7]

The Agreement further provides that the plaintiff will provide certain avionics services for JV Avionics in the Philippines at facilities provided by Aviatour.  The Agreement provides that Aviatour, in turn, "either individually or through its affiliated company Aviatour Fly N', Inc." (Doc. 1-2 at 11), (a) will provide financing and start-up costs for JV Avionics until JV Avionics' revenue increases enough to cover expenses; (b) will rent to JV Avionics an office and hangar space and provide the plaintiff with an air-conditioned office and work space; (c) will run JV Avionics' operation through Aviatour's books, pay the plaintiff as an employee "in order to qualify him for a working Visa to remain an extended amount of time in the Philippines" (Doc. 1-2 at 12), and (regardless of the amount of JV Avionics' revenue) pay the plaintiff a guaranteed annual salary of $60,000 for the first year and $70,000 for the second year; (d) will pay the plaintiff $400.00 monthly for rental of the plaintiff's avionics equipment; (e) will "relocate" the plaintiff and his equipment to the Philippines, insure the equipment, and (should JV

---

[7] See also Tex. Bus. Org. Code Ann. § 101.114 ("Except as and to the extent the company agreement specifically provides otherwise, a member or manager is not liable for a debt, obligation, or liability of a limited liability company, including a debt, obligation, or liability under a judgment, decree, or order of a court.").

Avionics fail to meet its goals or cease operations) "guarantee relocation of [the plaintiff] and his belongings back to the United States" (Doc. 1-2 at 12); (f) will refrain from competition with JV Avionics; and (g) will market JV Avionics' services throughout Asia.

Finally, the Agreement includes a forum selection clause providing (Doc. 1-2 at 17) that "[t]he exclusive forum, jurisdiction and venue for any litigation is agreed to be in the state courts situated in Pinellas County, Florida or federal court in Hillsborough County, Florida." The United States District Court for the Middle District of Florida includes Hillsborough County. See 28 U.S.C. § 89(b).

The complaint alleges that, upon arrival in the Philippines, the plaintiff (Doc. 1 ¶ 25) "encountered numerous obstacles, including lack of pay, lack of sufficient work and storage space, and failure by Aviatour to pay for and secure a work Visa for the plaintiff." After receiving no pay for six weeks, on July 7, 2008, the plaintiff requested payment and was informed by an unidentified person that (i) no payment would be forthcoming and (ii) the plaintiff was free to retrieve his property and equipment. However, when the plaintiff returned to the hangar to collect the property and equipment on the following day (Doc. 1 ¶ 29), "Bahinting and employees of Aviatour Fly N' physically assaulted and injured the plaintiff, denying him access to his property and equipment . . . ." The complaint further alleges (Doc. 1 ¶ 30) that "Defendants . . . continue to refuse the return of Plaintiff's property or to pay Plaintiff for services rendered" as required by the Agreement.

Count one alleges that the plaintiff served as a managing member and half-owner of JV Avionics from February 23, 2008, to July 8, 2008 (when the plaintiff "was locked out of the facility in Cebu, Philippines"), and count one purports to state a claim against

"Defendants" for unspecified violations (presumably, violation of the minimum wage or overtimes provisions, see 29 U.S.C. §§ 206-207) of the FLSA.

Count two asserts a claim for breach of contract against all defendants except Bahinting and alleges that "Madrid, Aviatour and Aviatour Fly N'" (1) failed to pay the plaintiff his salary as required by the Agreement, (2) failed to provide suitable office and work space to conduct avionics services, (3) failed to provide financing and start-up costs to JV Avionics as required by the Agreement, (4) failed to market the plaintiff's avionics services throughout Asia, (5) failed to return the plaintiff's personal property and avionics equipment to the United States, (6) failed to pay the plaintiff rent for his avionics equipment, and (7) failed to provide work or storage space and to secure a work visa for the plaintiff as required by the Agreement.

Count three asserts a claim against the "Defendants" for conversion of the plaintiff's personal property and avionics equipment.

Without contradiction, Madrid states in an April 3, 2009, affidavit (Doc. 9-2 at 1-3) that he (a) has continuously resided in Plano, Texas, since 2005, and was in Texas on July 8, 2008, (b) has never owned real or personal property in Florida, (c) has not traveled "regularly" to Florida for any purpose, (d) has not engaged in "activity for [his] personal benefit" in Florida, and (e) has executed the Agreement on behalf of Aviotour in Texas. However, Madrid admits, "I did have some limited sporadic communications with Plaintiff via telephone and email while Plaintiff was residing in the State of Florida in an effort to negotiate and solidify a joint venture between Plaintiff and Aviatour, Inc. for business transactions to be conducted exclusively in Cebu, Philippines." However, Madrid insists that "all the work that was contemplated to be performed by Plaintiff,

including those activities to be accomplished through JV Avionocs, LLC, was to take place in Cebu, Philippines and nowhere else."[8]

About August 28, 2008, Aviatour sued the plaintiff in state court in Collin County, Texas. Aviatour, Inc. v. Van Zyl, No. 416–02609-08 (Tex. 416th Dist. Ct.) ("the Texas action"). In the Texas action, Aviatour seeks (Doc. 9-2 at 4-27) a declaration that the Agreement is void for employing terms "neither defined nor recognized by Texas law regarding limited liability companies." Additionally, Aviatour asserts a claim for breach of fiduciary duty and a claim under the Texas Theft Liability Act.[9] About April 6, 2009, Van Zyl filed a special appearance in the Texas action and moved (Doc. 12-2) to dismiss "for lack of subject matter jurisdiction" on the basis of the forum selection clause.

## DISCUSSION

Personal jurisdiction over a non-resident defendant generally requires a determination whether the exercise of jurisdiction is authorized under a federal statute or the forum state's long-arm statute, see Fed. R. Civ. P. 4(k); Sculptchair, Inc. v. Century Arts, Ltd., 94 F.3d 623, 626-27 (11th Cir. 1996), and whether exercising jurisdiction comports with due process, "which requires that the defendant have minimum contacts with the forum state and that the exercise of jurisdiction not offend

---

[8] Madrid further states (Doc. 9-2 ¶ 13) that the plaintiff "desired to be paid, at least in part, by Aviatour, Inc. in the Philippines" to reduce the plaintiff's taxable income in the United States. To support the conclusion, Madrid attaches a series of December 10-11, 2007, e-mail messages (Doc. 9-2 at 57-58) in which the plaintiff asks a series of questions about his salary and declares, "I am trying to figure out if it is best to get my entire pay from Aviatour with all PH tax or a small amount from Aviatour and a larger sum from JV Avionics in the USA." The messages provide no clue to the result of the plaintiff's deliberations–that is, to whether or not the plaintiff concluded that payment in the Philippines would serve him best.

[9] See Tex. Civ. Prac. & Rem. Code Ann. § 134.001-005.

'traditional notions of fair play and substantial justice.'" Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A., 421 F.3d 1162, 1166 (11th Cir. 2005) (citation omitted).

"When a district court does not conduct a discretionary evidentiary hearing on a motion to dismiss for lack of jurisdiction, the plaintiff must establish a prima facie case of personal jurisdiction over a nonresident defendant." Madara v. Hall, 916 F.2d 1510, 1514 (11th Cir. 1990) (citing Morris v. SSE, Inc., 843 F.2d 489, 492 (11th Cir. 1988)). "A prima facie case is established if the plaintiff presents enough evidence to withstand a motion for directed verdict." Madara, 916 F.2d at 1514 (citing Morris, 843 F.2d at 492). If the allegations of the complaint (a) fail to establish a prima facie case of personal jurisdiction or (b) are controverted by the defendant's evidence, the plaintiff must cure the deficiency with affirmative evidence. Posner v. Essex Ins. Co., Ltd., 178 F.3d 1209, 1215 (11th Cir. 1999). However, to the extent uncontroverted by the defendant's evidence, facts alleged in the complaint are assumed true. Madara, 916 F.2d at 1514 (citing Morris, 843 F.2d at 492). Even if included in an affidavit, "conclusory assertions of ultimate fact are insufficient to shift to the [plainitff] the burden of producing evidence supporting jurisdiction." Posner, 178 F.3d at 1215. Additionally, "where the plaintiff's complaint and the defendant's affidavits conflict, the district court must construe all reasonable inferences in favor of the plaintiff." Madara, 916 F.2d at 1514 (citing Morris, 843 F.2d at 492). Finally, if the forum's long-arm statute provides jurisdiction over one claim, personal jurisdiction exists over each claim arising from "the same jurisdiction generating event." Cronin v. Washington Nat'l Ins. Co., 980 F.2d 663, 671 (11th Cir. 1993).

Forum selection clauses are "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10 (1972).[10] Forum selection clauses are unreasonable only if "(1) their formation was induced by fraud or overreaching; (2) the plaintiff effectively would be deprived of its day in court because of the inconvenience or unfairness of the chosen forum; (3) the fundamental unfairness of the chosen law would deprive the plaintiff of a remedy; or (4) enforcement of the provisions would contravene a strong public policy." Lipcon v. Underwriters at Lloyd's, London, 148 F.3d 1285, 1292 (11th Cir. 1998).

Aviatour contends that the forum selection clause in the Agreement is unreasonable because (a) the clause imposes on Aviatour the burden of litigating the same or similar issues in parallel lawsuits and (b) Florida is an inconvenient forum. However, Aviatour evidently caused parallel lawsuits by filing the Texas action in violation of the forum selection clause. Aviatour does not argue that the relief sought in the Texas action is unavailable in a federal court in Florida. Second, Aviatour asserts generally that Florida is inconvenient because "most likely all witnesses that will be called for testimony" (Aviatour apparently excludes the plaintiff from among the "witnesses"[11]) reside outside Florida (although not necessarily in Texas), depositions of witnesses "will take place in Texas and the Philippines,"[12] and "most [discovery] work

---

[10] See also M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 15 (1972) (forum clause should control "absent a strong showing that it should be set aside.").

[11] See Doc. 1 ¶ 3 ("Plaintiff . . . resides in Dunedin, Florida . . . .").

[12] But see Local Rule 3.04(b) ("[A] non-resident defendant who intends to be present in person at trial may reasonably be deposed at least once in this District either during the discovery stages of the case or within a week prior to trial as circumstances seem to suggest.").

- 8 -

will occur outside Florida" (although not necessarily in Texas). However, Aviatour fails to argue that these inconveniences, even if unique to Florida, were either unforeseeable by the parties or "so gravely difficult and inconvenient that [Aviatour] will for all practical purposes be deprived of [its] day in court." See M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10 (1972) (concluding that, if the inconvenience was clearly foreseeable at the time of contracting, "it should be incumbent on the party seeking to escape his contract to show that trial in the contractual forum will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court. Absent that, there is no basis for concluding that it would be unfair, unjust, or unreasonable to hold that party to his bargain.").[13] In short, Aviatour asserts no legally sufficient ground for evading the parties' bargain.

The plaintiff argues (Doc. 12 at 4) that the forum selection clause "confers jurisdiction . . . in the Middle District." The plaintiff relies on Burger King Corp. v. Rudzewicz, 471 U.S. 462, 473 n.14 (1985), which states (1) that, because personal jurisdiction requirement is a waivable right, parties may "stipulate in advance to submit their controversies for resolution within a particular jurisdiction" and (2) that enforcement of a forum selection clause valid under Bremen "does not offend due process."[14] However, under the Florida long-arm statute, Section 48.193, Florida Statutes, "a contractual choice of forum clause designating Florida as the forum cannot serve as the

---

[13] See also Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585, 594-95 (1991) (inconvenience for Washington residents of litigating in Florida insufficient to satisfy the "heavy burden of proof" required to set aside a forum selection clause clause on grounds of inconvenience).

[14] See also Carnival Cruise Lines, 499 U.S. at 589 (unnecessary to consider constitutional objection to personal jurisdiction because forum-selection clause was "dispositive of this question"); Alexander Proudfoot Co. World Headquarters L.P. v. Thayer, 877 F.2d 912, 921 (11th Cir. 1989) ("The enforcement of an agreement conferring jurisdiction does not offend due process where the provision is freely negotiated and not unreasonable or unjust.").

- 9 -

sole basis for asserting in personam jurisdiction over an objecting, non-resident defendant." McRae v. J.D./M.D., Inc., 511 So. 2d 540, 544 (Fla. 1987).[15] Accordingly, McRae requires an independent basis for personal jurisdiction under Section 48.193.[16] The "corporate shield" doctrine generally prohibits the exercise of jurisdiction under the Florida long-arm statute over a corporate employee whose only conduct in Florida was in furtherance of the corporation's interests. See Doe v. Thompson, 620 So. 2d 1004, 1005-06 (Fla. 1993).

---

[15] See also Alexander Proudfoot, 877 F.2d at 919 ("Under Florida law, clauses conferring personal jurisdiction are insufficient to establish in personam jurisdiction, absent an independent basis for jurisdiction under the long-arm statute") (citing McRae).

[16] Because the plaintiff asserts no claim under a federal statute authorizing service of process, see Aviles v. Kunkle, 978 F.2d 201, 204 (5th Cir. 1992) (noting that the FLSA is silent as to service of process), McRae apparently applies also to the plaintiff's federal claim. See Omni Capital Int'l., Ltd. v. Rudolf Wolff & Co., Ltd., 484 U.S. 97, 104-08 (1987) (no personal jurisdiction unless the defendant is amenable to service of process, which must be authorized by statute or rule); Fed. R. Civ. P. 4(k)(1); Sculptchair, Inc. v. Century Arts, Ltd., 94 F.3d 623, 626-27 (11th Cir. 1996) ("When jurisdiction is based on a federal question arising under a statute that is silent regarding service of process, Rule 4(e) of the Federal Rules of Civil Procedure directs us to look to the state long-arm statute in order to determine the existence of personal jurisdiction."); 16 James Wm. Moore et al., Moore's Federal Practice § 108.60 ("Federal courts must generally apply the relevant state statute even when the cause of action is purely federal."); Ahern v. Pacific Gulf Marine, Inc., No. 8:06-cv-2068-T-27MSS, 2008 WL 706501, *6 (M.D. Fla. Mar. 14, 2008) ("While 'consent' may suffice to demonstrate that the exercise of jurisdiction is constitutionally permissible under the Due Process Clause, Plaintiffs must still invoke a federal statute or state long-arm statute making the non-resident defendant amenable to service of process and personal jurisdiction."). However, Alexander Proudfoot applies McRae to a diversity action in part because the application of federal law (rather than the Florida rule) would encourage forum shopping. The premise appears false (and the decision's Erie analysis unnecessary) if federal law requires the application of the Florida rule in any event. See also Burger King Corp. v. Rudzewicz, 471 U.S. 462, 473 n.14 (1985); National Equip. Rental, Ltd. v. Szukhent, 375 U.S. 311, 315-16 (1964) ("[P]arties to a contract may agree in advance to submit to the jurisdiction of a given court."); Heller Fin., Inc. v. Midwhey Powder Co., Inc., 883 F.2d 1286, 1292 (7th Cir. 1989) ("Obviously, a valid forum-selection clause, even standing alone, can confer personal jurisdiction.") (citing Burger King, 471 U.S. at 472 n.14); Menorah Ins. Co., Ltd. v. INX Reinsurance Corp., 72 F.3d 218, 222 n.6 (1st Cir. 1995) ("In the commercial context a forum selection clause . . . confers personal jurisdiction on the courts of the chosen forum."); Chan v. Society Expeditions, Inc., 39 F.3d 1398, 1406-07 (9th Cir. 1994) (forum selection clause alone can confer personal jurisdiction). But see Johns v. Taramita, 132 F. Supp. 2d 1021, 1028 (S.D. Fla. 2001) (distinguishing Chan, Menorah Insurance Co., and similar decisions on the ground that "none of those decisions apply Florida's long-arm statute, and the long-arm statutes of the states where those courts sit automatically confer personal jurisdiction when parties enter into forum selection clauses.").

As the statutory basis for jurisdiction, the plaintiff cites Section 48.193(1)(g), Florida Statutes, which provides for personal jurisdiction over a non-resident defendant for a claim arising from the defendant's "[b]reaching a contract in this state by failing to perform acts required by the contract to be performed in this state." To provide a basis for jurisdiction under Section 48.193(1)(g), "'[i]t is not enough that a foreign defendant merely contract with a Florida resident.' Rather, the contract itself must require performance in Florida." Travel Opportunities of Fort Lauderdale, Inc. v. Walter Karl List Mgmt., Inc., 726 So. 2d 313, 314 (Fla. 4th DCA 1998). The plaintiff argues (Doc. 12 at 4) that Section 48.193(1)(g) provides a basis for personal jurisdiction because, under the Agreement, "Aviatour and Madrid were to arrange the pickup and shipment of Plaintiff's equipment and personal property from Florida, and were also to arrange the return of Plaintiff's equipment and property to Florida to conclude the Agreement." The Agreement states (Doc. 1-2 at 12) that Aviatour "shall guarantee relocation of [the plaintiff] and his belongings back to the United States," and the complaint alleges that Aviatour failed to return the plaintiff's goods to the United States. Although not expressly mentioning Florida, these assertions (if favorably construed) sufficiently allege both Aviatour's contractual obligation to "relocate" the plaintiff's property to Florida (the plaintiff's residence) and Aviatour's failure to perform. Because count two arises in part (though not entirely) from the alleged breach, Section 48.193(1)(g) permits personal jurisdiction over Aviatour as to count two.

Section 48.193(1)(g) also permits long-arm jurisdiction over count two based upon Aviatour's alleged failure to pay the plaintiff as required by the Agreement. Because the Agreement fails to specify a place for payment, the presumptive place of

- 11 -

payment is Florida.[17]  The provisions for the "relocation" of the plaintiff to the Philippines for full-time work weaken the presumption–at least as to the plaintiff's "salary" payments.  However, if favorably construed, the Agreement nevertheless permits the inference that Florida is the agreed place of payment, and the limited evidence as to the parties' course of dealing following the formation of JV Avionics appears to support the inference.[18]  Finally, Aviatour's evidentiary material fails to defeat the inference.  Besides consisting of unsupported speculation as to the plaintiff's state of mind, Madrid's assertion (Doc. 9-2 ¶ 13) that the plaintiff "desired to be paid, at least in part, by Aviatour, Inc. in the Philippines" permits the inference that the plaintiff wished to be paid (and consequently agreed to be paid) in part in Florida.  In short, if construed favorably to the plaintiff, the Agreement requires payment at the plaintiff's Florida residence, the complaint sufficiently alleges a breach, and Aviatour fails to rebut the plaintiff's prima facie case for jurisdiction under Section 48.193(1)(g).

Finally, because count one essentially asserts an alternative theory of recovery for Aviatour's failure to pay for work performed pursuant to the Agreement–that is, because counts one and two arise for the most part "from the same jurisdiction generating event"–jurisdiction exists as to both claims.  See Cronin, 980 F.2d at 671.

---

[17] See Madax Int'l Corp. v. Delcher Intercontinental Moving Servs., Inc., 342 So. 2d 1082 (Fla. 2d DCA 1977) (if there is an express promise to pay and the contract states no place of payment, the debtor must seek the creditor and the breach, if any, occurs where the creditor is domiciled).

[18] Madrid attaches a series of December 10-11, 2007, e-mails (Doc. 9-2 at 57-58) between Madrid and the plaintiff discussing the plaintiff's salary and other arrangements for the Philippine venture.  In a December 10, 2007, e-mail to the plaintiff, Madrid declares, "I'll mail you a check."  Although the precise purpose of the payment remains unspecified, the amount is evidently intended to cover supplies and equipment for the Philippine venture.  Cf. Jemar Bahinting Decl.  ¶ 4 ("In accordance with . . . the Agreement, Aviatour Inc. bankrolled Van Zyl's move to Cebu, Philippines.").

However, the plaintiff fails to present a prima facie case of personal jurisdiction as to the plaintiff's claim for conversion. Section 48.193(1)(b) permits jurisdiction over a non-resident defendant for a claim arising from the defendant's "[c]ommitting a tortious act within this state." The defendant's physical presence is not required if the tort causes injury in Florida. Wendt v. Horowitz, 822 So. 2d 1252, 1260 (Fla. 2002).[19] Conversion is an "act of dominion wrongfully asserted over another's property inconsistent with his ownership therein." Thomas v. Hertz Corp., 890 So. 2d 448, 449 (Fla. 3d DCA 2004) (citation omitted). Conversion "may occur where a person wrongfully refuses to relinquish property to which another has the right of possession" and "may be established despite evidence that the defendant . . . retained property based upon the mistaken belief that he had a right to possession, since malice is not an essential element of the action." Seymour v. Adams, 638 So. 2d 1044, 1047 (Fla. 5th DCA 1994) (citations omitted). "The 'essence of conversion' is the possession of property 'in conjunction with a present intent on the part of the wrongdoer to deprive the person entitled to possession of the property, which may be, but is not always, shown by demand and refusal.' Ernie Passeos, Inc. v. O'Halloran, 855 So. 2d 106, 108-109 (Fla. 2d DCA 2003) (citation omitted), review denied, 874 So. 2d 1192 (Fla. 2004). Both the alleged conversion of the plaintiff's property and the resulting legal injury[20] occurred

---

[19] Posner v. Essex Ins. Co., 178 F.3d 1209, 1216 (11th Cir. 1999), construes Section 48.193(1)(b) as permitting jurisdiction over the non-resident defendant who commits a tort outside of the state that causes injury inside the state. Cf. Wendt v. Horowitz, 822 So. 2d 1252, 1253 (Fla. 2002) (declining to decide "whether injury alone satisfies the requirement of section 48.193(1)(b)" but noting that "the federal courts that have addressed this issue, although acknowledging the confusion among Florida's district courts, have adopted a broad construction of section 48.193(1)(b), holding that the commission of torts out of state that cause an injury to an in-state resident satisfies Florida's long-arm statute").

[20] See United States v. Swiss Am. Bank, Ltd., 191 F.3d 30, 37 (1st Cir. 1999) ("The legal injury occasioned by the tort of conversion is deemed to occur where the actual conversion takes place.").

in the Philippines on July 8, 2008, when (1) (according to the complaint) the plaintiff returned to the hangar to collect his property, Bahinting and employees of Aviatour Fly N' "den[ied] [the plaintiff] access to his property," and the plaintiff "was locked out of the facility" and (2) (according to witness affidavits [Doc. 9-2 at 50-56]) the plaintiff "demanded . . . the immediate release of his avionics equipment and other paraphernalia"[21] and began to remove the property (despite Bahinting's protests) until prevented by law enforcement, summoned by employees of Aviatour Fly N'. However, personal jurisdiction cannot be based entirely on a showing that the Florida plaintiff suffered damage from a tort committed outside Florida and causing injury outside Florida. See Casita, L.P. v. Maplewood Equity Partners, L.P., 960 So. 2d 854 (Fla. 3d DCA 2007); Arch Aluminum & Glass Co. v. Haney, 964 So. 2d 228 (Fla. 4th DCA 2007). Accordingly, Section 48.193(1)(b) provides no basis for jurisdiction. See Ernie Passeos, Inc. v. O'Halloran, 855 So. 2d 106, 109 (Fla. 2d DCA 2003) (denying personal jurisdiction in Florida because conversion occurred in Ohio, where the defendant refused demand for possession).

Finally, the plaintiff fails to present a prima facie case of personal jurisdiction as to any claim against Madrid. The plaintiff contends that the provisions of the Agreement imposing obligations on Aviatour bind Madrid because Madrid executed the Agreement as a "member" (Doc. 12 at 2) and even a "managing member" (Doc. 12 at 6) of Avionics, LLC. This contention contradicts the plain language of the Agreement. The Agreement provides (Doc. 1-2 at 3, 7) that only a "member" of the company can be a "managing member." A "member" in turn is defined (Doc. 1-2 at 3) as "any person who

---

[21] See also Jemar Bahinting Decl. ¶ 7 ("[O]n July 8, 2008, Van Zyl . . . demanded . . . the immediate return of his avionics equipment and other paraphernalia . . . .").

has an equity interest in JV Avionics, LLC. . . ." The plaintiff does not contend that Madrid holds an equity interest in JV Avionics, and the Agreement states that the plaintiff and Aviatour are "the sole members of the Company each owning a fifty percent (50%) interest in the Company" (Doc. 1-2 at 1 [emphasis added]). Further, Madrid's signature appears above the following prominently displayed words: "AVIATOUR, INC., MEMBER By: KENNETH MADRID, Authorized Agent."

Although primarily an agreement between the members of JV Avionics,[22] the Agreement "retains" Madrid as a manager of JV Avionics. By executing the Agreement (even if on behalf of Aviatour) and acting as manager, Madrid accepted whatever duties to JV Avionics and to members of JV Avionics the Agreement or Texas law imposes on a manager. However, the plaintiff (a) asserts no claim on behalf of JV Avionics and (b) identifies no duty (e.g., a duty of care or loyalty) to the plaintiff individually imposed by the Agreement or Texas law on Madrid as a manager and forming the basis of the plaintiff's claims. Although under Texas law the Agreement likely "imposes individual . . . responsibilities on Madrid" (Doc. 12 at 6) as a manager, the complaint neither identifies those duties nor alleges a breach of those duties. Instead, the complaint alleges a breach of the provisions (enumerated in a section of the Agreement entitled "Initial Contributions and Duties") expressly imposing duties on Aviatour.

The plaintiff notes (Doc. 12 at 2) that the Agreement defines a "member" "partially as 'any person,'" and the plaintiff infers that "person" must mean "natural person."

---

[22] See Tex. Bus. Org. Code § 101.001 ("'Company agreement' means any agreement, written or oral, of the members concerning the affairs or the conduct of the business of a limited liability company"); cf. 1 Ribstein and Keatinge on Limited Liability Companies § 4:16 ("Every LLC statute except Wyoming's includes some definition of an operating agreement. The definitions commonly define the operating agreement as an agreement among the members that relates to the affairs of the business.").

However, the undisputed fact that Aviatour is a "member" of the company prevents the inference.[23] Finally, the plaintiff relies on a confusing provision (IV.2) of the Agreement:

> Managing member(s) (or manager(s) if applicable) must be natural persons of 18 years of age or older but need not be . . . members of JV Avionics, LLC. Notwithstanding, Aviatour, Inc. shall designate a natural person of 18 years of age or older to act on its behalf as <u>managing member</u>. Managing member(s) must be member(s) of JV Avionics, LLC; however, if manager(s) are utilized, manager(s) need not be member(s) of JV Avionics, LLC.

Literally interpreted, the provisions (1) that Aviatour "shall designate a natural person of 18 years of age or older to act on its behalf as <u>managing member</u>" and (2) that "managing member(s) must be member(s) of JV Avionics, LLC" evidently mandate the designation of the plaintiff (not Madrid) as sole managing member. Not being a member of the company, Madrid cannot qualify as a managing member according to the express terms of the provision (as well as other unambiguous provisions of the Agreement). However, consideration of the entire Agreement (which "retains" Madrid as a manager and the plaintiff as a managing member) alleviates any confusion. The obvious purpose of the provision is to require that Aviatour designate a natural person to act on its behalf in managing the affairs of the company–whether that natural person is a managing member (only the plaintiff would qualify because he is the only other member and the only member who is a natural person) or a manager who is not a member (e.g., Madrid).[24] In short, the plaintiff's construction of the Agreement is manifestly wrong. Finally, as to the alleged conversion, Madrid states without contradiction that he was in

---

[23] <u>See also</u> Tex. Bus. Org. Code § 1.002 (69-b) ("'Person' has the meaning assigned by Section 311.005, Government Code."); Tex. Govt. Code § 311.005(2) ("'Person' includes corporation, organization, government or governmental subdivision or agency, business trust, estate, trust, partnership, association, and any other legal entity.").

[24] <u>See</u> Tex. Bus. Org. Code § 101.302 ("A manager of a limited liability company is not required to be a . . . member of the company.").

- 16 -

Texas on July 8, 2008, and the plaintiff asserts no participation by Madrid in the July 8, 2008, conversion.[25]

A motion under Rule 12(b)(6), Federal Rules of Civil Procedure, challenges the legal sufficiency of the complaint. The complaint's factual allegations are accepted as true and construed most favorably to the plaintiff. Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007); Christopher v. Harbury, 536 U.S. 403, 406 (2002). Rule 8(a)(2), Federal Rules of Civil Procedure, requires a short and plain statement of the claim that fairly notifies the defendant of both the claim and the supporting grounds. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). The plaintiff's "obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (citation omitted). In short, the complaint must include "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570; see also Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). Finally, dismissal of a complaint is warranted if a dispositive legal issue precludes relief. Neitzke v. Williams, 490 U.S. 319, 326 (1989). The FLSA's minimum wage and overtime provisions do not apply to work performed in a foreign country.[26] The plaintiff seeks to recover for work performed in the Philippines. Accordingly, even if the plaintiff is an employee of JV Avionics and not otherwise exempt, count one fails to state a claim under the FLSA.

---

[25] See Doc. 12 at 7 (arguing that, although that count three "is directed primarily against Defendants Fly N' Inc. and Bahinting, Madrid and Aviatour, Inc. cannot separate themselves from the actions of their personal and corporate representatives in the Philippines.").

[26] See 29 U.S.C. § 213 ("The provisions of sections 206, 207, 211, and 212 of this title shall not apply with respect to any employee whose services during the workweek are performed in a workplace within a foreign country . . . ."); Smith v. Raytheon Co., 297 F. Supp. 2d 399, 401 (D. Mass. 2004); Ellen C. Kearns, The Fair Labor Standards Act §§ 3.V, 5.VI (1999).

**CONCLUSION**

Aviatour and Madrid's motion to dismiss (Doc. 8) is **GRANTED IN PART** and **DENIED IN PART** as follows. All claims against Madrid are **DISMISSED WITHOUT PREJUDICE** for lack of personal jurisdiction. As to Aviatour, count three (the conversion claim) is **DISMISSED WITHOUT PREJUDICE** for lack of personal jurisdiction, and count one (the FLSA claim) is **DISMISSED WITH PREJUDICE** for failure to state a claim on which relief can be granted. Otherwise, the motion is **DENIED**.

ORDERED in Tampa, Florida, on July 9, 2009.

/s/ Steven D. Merryday
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE